### WOODING v. THOM et al. (two cases).

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

1. MASTER AND SERVANT (§ 302*)—INJURIES TO SERVANT—LIABILITY OF MASTER.

An owner of an automobile directed his chauffeur to demonstrate its capabilities with a view to commend it to a possible purchaser. The chauffeur, while in sole control of the machine, demonstrating its fitness, permitted an employé of the prospective purchaser to drive it, which he did negligently, injuring a pedestrian. *Held*, that the owner was liable for the injuries to the pedestrian because the act of the chauffeur in permitting the employé to drive the machine was done in the prosecution of the business of the employment.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 302.*]

2. MASTER AND SERVANT (§ 302*)—INJURIES TO SERVANT—LIABILITY OF MASTER.

A prospective purchaser of an automobile directed an employé to examine the engine of the machine and report. While the chauffeur of the owner was demonstrating its capabilities, he permitted the employé to drive the machine, and he negligently drove it and injured a pedestrian.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

*Held*, that the prospective purchaser was not liable for the injuries, the employment not covering an actual running test of the machine, and the suggestion that he operate the machine coming from an agent of the owner employed to sell the machine.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 302.*]

3. DAMAGES (§ 132*)—PERSONAL INJURIES—EXCESSIVE DAMAGES.

Where a woman, by profession a teacher, was seriously injured, and some of the injuries were permanent, and she suffered pain, and the injuries would interfere with the pursuit of her profession, a verdict for $10,000 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385; Dec. Dig. § 132.*]

Appeal from Trial Term, New York County.

Action by Belle Wooding against William B. Thom and Townsend Scudder. From an order setting aside a verdict against defendant Thom and for new trial unless plaintiff stipulated to reduce the recovery, and from an order denying a motion for new trial as to defendant Scudder, plaintiff appeals, and from so much of the order as denies a new trial defendant Thom appeals. Affirmed in part and reversed in part.

See, also, 135 App. Div. 918, 120 N. Y. Supp. 1151.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Charles Caldwell, for plaintiff.

E. Clyde Sherwood, for appellant Thom.

John Vernou Bouvire, Jr., for respondent Scudder.

SCOTT, J. This action for damages for personal injuries resulted in a verdict in favor of plaintiff against the defendant Thom, and in favor of the defendant Scudder against plaintiff. These appeals, for there are three of them, are taken from an order made after verdict upon motions of plaintiff and defendant Thom to set aside the verdict and for a new trial.

The plaintiff appeals from the order in so far as it grants Thom's motion for a new trial unless plaintiff will stipulate to reduce the verdict from $10,000 to $5,000. She also appeals from the order in so far as it denies her motion to set aside the verdict in favor of Scudder.

The defendant Thom appeals from the order in so far as it denies, except conditionally, his motion to set aside the verdict as against him. No judgment has been entered.

The plaintiff, while walking upon the sidewalk in Seventy-Fifth street near West End avenue, was struck, knocked down, and seriously injured by an automobile which ran up on the sidewalk. There is no question as to the injuries, or as to her freedom from contributory negligence, or as to the negligence of the person who was operating the automobile. The only question is as to the responsibility of the defendants. The automobile belonged to the defendant Thom, who had sent it to an automobile auction company for sale. The defendant Scudder saw the car and thought he might like to buy it. He had in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

his employ a man named Eglit, who seems to have been a man of all work, doing odd jobs around Scudder's house and grounds. Among his duties, he at times ran a small automobile owned by Scudder and described as a runabout. Scudder sent this man to the garage of the auction company, with instructions to examine the engine of the automobile and to report as to its condition. He was given no instructions to take the car out and run it, and, inferentially, was directed not to do so; his employer saying that if Eglit's report as to the engine was satisfactory he (Scudder) would arrange about a demonstration and then take the car out for a trial. Eglit went to the garage and examined the engine. When he had completed his examination, one Favary, who was the sales agent of the auction company, suggested to Eglit that he should go out in the car and see how it ran. It does not appear that Eglit asked or suggested that the car be taken out for a demonstration, although he apparently acquiesced in Favary's suggestion. Favary thereupon telephones to one Simmons, who was Thom's chauffeur, to come to the garage and take the car out for a demonstration to an intending purchaser. Thom had given to Favary a telephone number to call up whenever he wanted to give a demonstration to a prospective buyer, and said that on receipt of such a call his man (Simmons) would come down and take the car out and demonstrate it, but that he did not wish anybody else but his own man to take the car out.

Simmons responded to the call and took the car out. He sat in the driver's seat at the wheel. Eglit sat next him on the front seat; Favary sitting on a rear seat. Simmons ran the car up Riverside Drive to 110th street, and then turned around to run back. At this point Favary suggested that it might be well to let Eglit run the car for a while; his idea being, as he testifies, that this might help to sell the car. Simmons and Eglit acquiesced in this suggestion; the latter taking the driver's seat and Simmons sitting by his side. Eglit ran the car down to Seventy-Sixth street, where he turned east towards West End avenue into which he turned, but so unskillfully that he ran partly upon the sidewalk. He was allowed, however, to continue to run the car. At Seventy-Fifth street he essayed to turn west toward Riverside Drive, and again ran on the sidewalk, hitting and injuring the plaintiff.

[1] First. As to Thom's liability: The discussion on this subject has taken a wide range, and very many cases have been called to our attention, covering nearly every phase of the relation of master and servant. The question, however, as it seems to us, is a narrow one and is whether or not Simmons in surrendering the actual driving of the car to Eglit was acting within the scope of his employment. The general rule, as well established, was stated in Gleason v. Amsdell, 9 Daly, 393, as follows:

"When an injury arises through the negligence of a servant, acting within the scope of his authority, the act of the servant is deemed the act of the master, and he is answerable for it. He is answerable for the negligence of whom the servant employs by his authority to aid in the employment of the master's business; and it is not necessary in such a case to show that such authority was expressly given; but it may be implied from the nature of

the business, the course of trade, and the circumstances of the particular case." Althorf v. Wolfe, 22 N. Y. 355; Kilroy v. D. & H. Co., 121 N. Y. 22, 24 N. E. 192; Ellefson v. Singer, 132 App. Div. 89, 116 N. Y. Supp. 453.

In the present case the master's business upon which Simmons was engaged was demonstrating the capabilities of the car with a view to commending it to a possible purchaser. The evidence clearly shows that the act of Simmons, who was in sole control, in permitting Eglit to drive the car, was because he (Simmons) conceived that to be a good way to demonstrate the quality of the car. It was an act performed in furtherance of his employment. It is not important that he had not been instructed to permit any one but himself to drive, for, as was said by Judge Grover in Cosgrove v. Ogden, 49 N. Y. 255, 10 Am. Rep. 361:

"The test of the master's responsibility for the act of his servant is not whether such act was done according to the instructions of the master to the servant, but whether it was done in the prosecution of the business that the servant was employed by the master to do."

If the owner himself had undertaken to demonstrate the car, and as a part of such demonstration had permitted Eglit to drive it, no one would have any doubt as to such owner's liability. The case here is no different. Simmons was authorized to demonstrate the car; that was his employment. In the course of that employment as a part of the demonstration he permitted Eglit to drive. This I think fastens upon Simmon's employer liability for the negligence which resulted in plaintiff's injuries.

[2] Second. As to Scudder's liability: The circumstances affecting this question are quite different from those first discussed. Scudder's employment of Eglit, so far as concerns this car, was strictly limited to an examination of the engine. Not only was Eglit not instructed to run the car, but the particular thing he was instructed to do did not by fair intendment imply or require a test of the car in actual operation upon the road. And it seems quite clear that Eglit himself did not consider that his employment covered an actual running test, for, as has been said, he neither asked for nor suggested it. The suggestion came from Favary, who was naturally anxious to make a sale. As we regard it, Eglit's acceptance of the proposition to ride in the car, and his subsequent acceptance of the invitation to run it, were quite outside the scope of his employment by Scudder with reference to this particular car.

[3] Third. As to the damages: We are of opinion that the order appealed from respecting the reduction of the damages was ill-advised. The plaintiff was seriously injured, and there seems every reason to suppose that a part of her injuries will prove to be permanent. Apart from the pain which she must necessarily have suffered, her injuries will to some extent interfere with the pursuit of her profession of teaching. The verdict was, as we think, none too large.

On Thom's appeal, the order, in so far as it denies his motion to set aside the verdict unconditionally, is affirmed.

On plaintiff's appeal, the order, in so far as it sets aside the verdict unless she stipulates it, is reversed, and the verdict restored.

On plaintiff's appeal the order, in so far as it denies her motion to set aside the verdict in favor of Scudder, is affirmed.

The plaintiff is entitled to costs and disbursements against the defendant Thom, and the defendant Scudder is entitled to costs and disbursements against the plaintiff. All concur.