[L. R. No. 3614.   Department Two.—July 27, 1916.]

## C. M. EASTON et al., Respondents, v. UNITED TRADE SCHOOL CONTRACTING COMPANY (a Corporation), Appellant.

NEGLIGENCE—COLLISION BETWEEN BUGGY AND AUTOMOBILE—OPERATION OF AUTOMOBILE BY STUDENT—LIABILITY OF SCHOOL OF INSTRUCTION. A school for instruction in the operation of automobiles is liable for injuries received by a person as the result of a collision between the buggy in which such person was riding and an automobile being operated by a student in the school under payment for the privilege of tuition, where at the time of the accident such student was receiving a lesson in driving from another student, who was employed by the school to give instructions to students who were not as far advanced as himself.

ID.—DAMAGES—FRIGHT AND FEAR—ACCOMPANYING PHYSICAL INJURY.— In such an action it cannot be contended that the injury resulted from fright and fear alone, and that therefore the award of the jury is unwarranted, where it is shown that the plaintiff was knocked forward out of her seat, and about a month thereafter suffered a miscarriage.

ID.—EVIDENCE—SECOND MISCARRIAGE.—Evidence that the injured woman suffered from a second miscarriage some months after the first miscarriage occasioned by the injury, is admissible, but of doubtful weight.

ID.—COMPETENCY OF DRIVER OF AUTOMOBILE—TESTIMONY OF INSTRUCTOR. The testimony of the instructor as to whether the student who operated the automobile was a qualified driver is admissible to show whether the car was under the management of a competent driver.

ID.—LOSS OF SERVICE—EXPENSES OF INJURIES—RECOVERY BY HUSBAND. In an action in the names of a husband and wife for damages for personal injuries to the wife, it is improper to award any sum for loss of the wife's services and expenses incurred by reason of the injuries, as such damages are occasioned to the husband alone, and for them he alone is entitled to sue.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. John M. York, Judge.

The facts are stated in the opinion of the court.

J. E. Coberly, B. A. Finch, and Scarborough & Bowen, for Appellant.

Ray Howard, for Respondents.

HENSHAW, J.—The action is for damages growing out of injuries sustained by plaintiff C. M. Easton's wife. Trial was had before the court without a jury, and resulted in an award and judgment for plaintiffs. The items composing this judgment were five thousand dollars for her bodily injuries, $50 for her disability and loss of society, comfort, and service to her husband, $75 for nursing during her illness, $25 for physician's services, and $10 for medicines. Each of these minor items was made an element of special damage in the complaint.

The charge was that while Mary E. Easton, plaintiff, was driving a horse attached to a buggy along a street in Los Angeles, an automobile of defendant, in charge of one of defendant's agents, was negligently and carelessly driven against the buggy, inflicting the injuries complained of, which injuries will hereinafter be more specifically described. The evidence established that Mrs. Easton was riding in a buggy on Central Avenue in Los Angeles City. With her was her sister-in-law who carried on her lap one of Mrs. Easton's daughters about five years of age, while another daughter, about eight and a half years of age, sat on a board at the feet of the woman. The horse was going at a dog trot and the buggy was on the proper side of the street, as near to the curb as possible, as the ordinance of the city required.

The defendant was conducting a school for instruction, amongst other things, in the operation of automobiles. Elmer Harper, seventeen years of age, was a student in the school under payment for the privilege of tuition. D. B. Sterling was also a student in the same school, but had advanced to the point where he describes his occupation to be that of chauffeur and his employment as driving and working in the

garage or workshop of the defendant, and in instructing and driving defendant's students. All of this he did under the directions of B. A. Finch, defendant's president. Upon the day of the injury, acting under these directions, Sterling took Harper in an automobile to give him a lesson in driving. Sterling himself drove the car into Central Avenue, and there, as the street seemed clear, he surrendered the wheel and permitted Harper to drive it. Upon Central Avenue was a street-car line and on its tracks a street-car, proceeding in the same direction as was the buggy. The automobile, going in the same direction as the car and buggy, approached the two from behind. The automobile, under the management of the inexperienced student, Harper, apparently sought to pass between the street-car and the buggy. Harper became confused, mismanaged the automobile, and collided with both the street-car and the buggy. The collision knocked one child out of the buggy, broke the buggy wheel, bent the rear axle, knocked the tire off the front wheel, forced the horse to his haunches, and delivered so severe a shock to Mrs. Easton, who was leaning against the back of the seat of the buggy, that she was knocked forward out of her seat. Mrs. Easton was at the time pregnant. About a month thereafter she suffered a miscarriage. By the medical testimony the foetus had been dead about two or three weeks and the miscarriage was the result of the fright and the shock of the collision.

Appellant's principal argument is that there was no privity between Harper or Sterling and the defendant rendering defendant liable for the negligence of either of them. But the facts above stated would seem conclusively to dispose of this argument. The defendant, as a part of its business, employed Sterling to give Harper instructions. It paid Sterling for so doing. Sterling, in the performance of this employment, used his own judgment, which by operation of law became the defendant's judgment, in turning the management of the car over to Harper when and as he did. That the accident resulted from the ignorance and inexperience of Harper may not for a moment be doubted, and while, of course, Harper would be responsible for his own act in the premises, and Sterling in turn responsible, none the less the defendant, under whose directions all of these things were done, is likewise responsible. (*Minor* v. *Mapes,* 102 Ark. 351, [39 L. R. A. (N. S.) 214, 144 S. W. 219] ; *Burnham* v. *Cen-*

*tral Automobile Exchange* (R. I.), 67 Atl. 429; *Collard* v. *Beach,* 81 App. Div. 582, [81 N. Y. Supp. 619]; *Wooding* v. *Thom,* 148 App. Div. 21, [132 N. Y. Supp. 50].)

Appellant's next proposition is that Mrs. Easton received no injuries as such; that she suffered merely from fright; that fright alone, without personal injury, cannot be made the foundation of an action for damages, but that whatever may be the rule in this respect "plaintiff cannot recover in this action because it appears that her fright was caused by apprehension of threatened danger not to herself but only to her child." But appellant's position requires neither a discussion of the principle nor a detailed consideration of the authorities, for the reason that the facts do not show that plaintiff's injuries were occasioned by fright alone, nor fear of danger or injury to her child alone. True, she suffered fright and fear occasioned by the collision. True, a part of that fright and fear grew out of concern for her infant child which was thrown out of the buggy by the collision, but equally true it is that, leaning, as she was, against the back of the seat, she sustained a direct personal physical shock by the blow of the automobile against the buggy, which blow propelled her forward out of her seat, and which blow directly contributed to and aided in causing the miscarriage from which she afterward suffered. Fright here was but a natural and direct consequence of defendant's injurious trespass, which trespass resulted in direct physical injury to Mrs. Easton. The fright was an inevitable concomitant of the trespass. This case, therefore, presents no feature in common with such cases relied upon by appellant as *Mitchell* v. *Rochester Ry. Co.,* 151 N. Y. 107, [56 Am. St. Rep. 604, 34 L. R. A. 781, 45 N. E. 354], where plaintiff, about to board one of the cars of the defendant, sustained fright because of the approach of another car, which fright resulted in a miscarriage; nor *Phillips* v. *Dickerson,* 85 Ill. 11, [28 Am. Rep. 607], where the plaintiff, a married woman, sued for damages because of a miscarriage occasioned by her fright over a quarrel between the defendant and her husband, within her hearing but out of her sight; nor *Braun* v. *Craven,* 175 Ill. 401, [42 L. R. A. 199, 51 N. E. 657], where a recovery was sought against defendant because he had entered a house where plaintiff was, unannounced, and had demeaned himself improperly and in a violent and boisterous manner, "causing

her to become sick, sore, and disabled"; nor *Miller* v. *Balti-more & Ohio S. R. Co.*, 78 Ohio St. 309, [125 Am. St. Rep. 699, 18 L. R. A. (N. S.) 949, 85 N. E. 499], where defendant was charged with having negligently shoved cars into the dwelling-house of plaintiff so that plaintiff, who was standing near by, "suffered a severe nervous shock that shattered her nervous system and caused her great bodily pain and mental anguish and permanent injury to her person and health," and it was held that an act of negligence neither willful nor malicious, causing mere fright, unaccompanied by contemporaneous physical injury, is not actionable; nor in *Huston* v. *Borough of Freemansburg*, 212 Pa. St. 548, [3 L. R. A. (N. S.) 49, 61 Atl. 1022], where the defendant borough in excavating a street exploded dynamite, and it was charged that the shock of the explosion so affected plaintiff's husband, who was recovering from typhoid fever, that he died within two weeks, and the holding is simply that there can be no recovery of damage from fright or other merely mental suffering, unconnected with physical injury; nor in *Chittick* v. *Philadelphia Rapid Transit Co.*, 224 Pa. St. 13, [22 L. R. A. (N. S.) 1073, 73 Atl. 4], where plaintiff, sitting in her window, two hundred or three hundred feet distant, charged that she sustained fright and consequent injuries from the flash and explosion of an electric trolley wire. In all these cases and the like cases, fright alone was made the gravamen of the action, the physical injuries charged resulting merely from the fright. In no one of these cases, nor in any other well-adjudicated case—and certainly not by the courts of this state—is it held that where fright accompanies or follows a wrongful physical injury, that it is not an element of damage. To the contrary, fright under such circumstances is but one form of mental anguish, and the mental anguish as a direct reasonable outcome of the illegal physical injuries is always an element of damage. Such is the rule of decision in this state, where it is held that although mental suffering alone will not support an action for damages (and of course fright is but one form of mental suffering), yet mental suffering and mental anguish are an element of damage in aggravation thereof when they naturally ensue from the act complained of. (*Sloane* v. *Southern Cal. Ry. Co.*, 111 Cal. 668, [32 L. R. A. 193, 44 Pac. 320]; *Thomas* v. *Gates*, 126 Cal. 7, [58 Pac. 315].)

And so the holding of all these cases which we have been briefly reviewing is simply to the effect, as declared by those courts, that they have been unable to find any decided case which holds that mental suffering alone, unattended by any injury to the person caused by simple actionable negligence can sustain an action, "and the fact that no such case exists, and that no elementary writer asserts such doctrine, is a strong argument against it." (*Wyman* v. *Leavitt,* 71 Me. 227, [36 Am. Rep. 303].) While touching the nature of the injuries in the case at bar it may be added that it is very properly declared in *Warren* v. *Boston & Maine Ry. Co.,* 163 Mass. 484, [40 N. E. 895], that "it is a physical injury to a person to be thrown out of a wagon, or to be compelled to jump out, even though the harm done consists mainly of nervous shock."

Appellant's next contention is that the award of five thousand dollars is excessive. The nature of the injury has been sufficiently outlined, and its character disposes of this argument without the need of elaboration.

Appellant very justly complains that in this action for the recovery of damages for injuries occasioned to the wife the items of special damage have no place. (*Matthew* v. *Central Pac. R. Co.,* 63 Cal. 450; *Tell* v. *Gibson,* 66 Cal. 247, [5 Pac. 223]; *Gomez* v. *Scanlan,* 155 Cal. 528, [102 Pac. 12].) These minor items are damages occasioned to the husband alone and for which alone he is entitled to sue. But in this instance the court has segregated these items and elements of damage, and its total judgment of $5,160 may therefore be reduced by striking out the special sums awarded. Thus modified the judgment will remain in the sum of five thousand dollars damages for injuries sustained by plaintiff Mary E. Easton.

Complaint is made that the court allowed evidence that Mrs. Easton suffered from a second miscarriage some months after the first miscarriage occasioned by the injury. The physician's testimony was to the effect that one miscarriage by injury and shock, and in particular where the foetus was carried for a considerable period of time dead in the womb, would create at least a tendency to cause a second miscarriage, and that in this specific case he attributed the second miscarriage to the condition of Mrs. Easton and her womb— a condition caused by the injuries. It may at once be said that this evidence is of doubtful weight, but it was not in-

admissible, and its weight was for the jury. The hypothetical question as to the effect that shock and fright might or would have on a pregnant woman of Mrs. Easton's age and physical condition, even if objectionable, was not of such vital consequence as to demand a reversal of the case.

Finally it is said that the court erred in permitting the witness Sterling to answer the question whether Harper, who was driving the car at the time of the accident, was a qualified driver. It is said that the question was immaterial and the answer prejudicial. It was clearly material, it being evidence whether the car was under the management of a competent driver or not, and while doubtless prejudicial in the sense that it showed or tended to show that the car was not being properly managed, the injury which it may have worked to defendant's case was entirely within the purview of the law.

With a modification of the damages awarded, as above indicated, from $5,160 to five thousand dollars, the judgment and order appealed from are affirmed.

Lorigan, J., and Melvin, J., concurred.