Hillsborough,
Jan. 5, 1932.

## ELLA GREENIE v. NASHUA BUICK COMPANY.

*Devine & Tobin* and *Samuel A. T. Spence (Mr. Tobin* orally), for the plaintiff.

*Warren, Howe & Wilson (Mr. Robert P. Bingham* orally), for the defendant.

BRANCH, J. There was evidence from which the following facts might be found. The defendant had contracted for the sale of an automobile to one Peck and as a part of the transaction had agreed to teach him to drive. Peck was a man seventy-four years old who had had many years experience in driving a Ford car "with the old shifts," but he had never operated a "gear shift car" before. On the day of the accident he went to the defendant's garage in Milford to receive instruction which one Tarbell, an agent of the defendant, undertook to give. He testified that Tarbell gave him "just theoretical

instructions as to changing a gear and the brakes and the like," after which Tarbell got into the car with him and he (Peck) started out very slowly from the garage in low gear.

The highway in front of the garage, known as Elm street, is a well traveled road and a part of the state highway system. Before reaching the roadway the automobile traversed a sidewalk eight feet wide at a very slow speed. After entering the roadway, when the front end of the car was three or four feet from the center of the street, Peck and Tarbell first noticed the plaintiff's car approaching from the right and both undertook to stop the defendant's car. Tarbell pulled the emergency brake and Peck said that he "pushed out the clutch" but "didn't get hold of the brake." The plaintiff's evidence tended to show that the defendant's car then "leaped" or "shot" ahead and collided with her machine inflicting the injuries complained of. From the admissions of Peck, made soon after the accident, which went before the jury without objection or limitation, it might be found that when he undertook to put his foot on the brake he depressed the accelerator and thus caused sudden movement of the defendant's car.

The plaintiff was driving in the middle of the road at a speed of fifteen or twenty miles per hour. She saw the defendant's car moving so slowly that she thought it was going to stop for her to pass and therefore she did not change her course or slacken her speed before she was struck. The question of her care was clearly for the jury.

There is no evidence from which it could be found that Peck was the servant or agent of the defendant. Consequently the question of the defendant's liability turns upon the issue of Tarbell's fault, and we think that upon this issue there was evidence to go to the jury.

It is a necessary conclusion from the testimony that the actual custody and control of the automobile was in Tarbell. Peck was known by all the parties including himself to be incompetent to manage this type of motor vehicle and it was not entrusted to him. Although Peck was at the wheel, all control of the machine except the mere mechanical manipulation of it was for the time and occasion in Tarbell. It was his duty to supervise and direct the acts of Peck and the movements of the car.

In an ordinary case this would be a necessary conclusion from the language of the statute which permits the operation of motor vehicles by unlicensed persons "while being taught to operate, if riding with or accompanied by a licensed chauffeur or operator." P. L., c. 101, s. 10. The purpose of this section of the motor vehicle law, like that of the section which requires operators to be licensed (P. L., c. 101, s.

1), is the protection of the public from the acts of incompetent drivers. *Johnson* v. *Railroad*, 83 N. H. 350, 351. Unless the instructor exercises control over the acts of the learner and the movements of the car his presence serves no useful purpose so far as the protection of those using the highways is concerned. In the present case it appears that Peck already held an operator's license by virtue of his previous experience with Ford cars, but in view of his known inability to operate cars of other types the responsibility of Tarbell was substantially the same as it would have been if Peck had never held a license.

Since Tarbell, as the defendant's agent, was thus in command of the situation, any negligent failure on his part to control the movements of the car so as to avoid harm to other travelers would impose liability upon the defendant for injuries resulting therefrom. We think that there are two grounds upon which Tarbell might be found to have been negligent.

In the first place we agree with the argument of the plaintiff that "the jury was warranted in finding that the cause of this collision was the negligence of Tarbell in placing a known inexperienced operator at the wheel of this car in a congested part of the Town of Milford." The evidence in regard to the traffic on Elm street, its location in the village of Milford, the known incompetency of Peck, and the "theoretical" character of the instruction given to him before he started the car all tend to justify the suggested finding that Tarbell was negligent in allowing Peck to drive at the time and place of the accident.

In the second place it might be found that the accident was due, in part at least, to the failure of Tarbell to discover the approach of the plaintiff's car and take measures to avoid trouble before the danger of collision became imminent, and it was for the jury to say whether that failure was negligent. To be sure there was evidence that his view to the right was somewhat obstructed by cars parked along the street, but it cannot be said as a matter of law that he could not or ought not to have seen the plaintiff's car in time to avoid coming in contact with it either by warning Peck of the danger or by seasonably applying the hand brake himself.

The validity of the foregoing conclusions is not affected by the jury's finding, implicit in its verdicts, that Peck was not negligent. Although the jury must have found that it was not negligent for Peck to attempt to drive the car at the time and place of the accident, this finding does not compel a conclusion that Tarbell was free from fault in allowing him to take the wheel. Even though Peck realized his limitations as a driver it might be found that having placed himself

under Tarbell's direction for the purpose of receiving instruction he was justified in relying upon Tarbell's judgment as to the proper time and place for him to undertake the actual operation of the car. No exoneration of Tarbell would be implied in such a finding.

Nor did the verdict in the action against Peck involve, as the defendant argues, a finding that "he operated the car competently and with due care so far as this collision is concerned." No finding that the car was operated "competently" with reference to the rights of other travelers can be spelled out of the verdict in Peck's case, in view of the verdict in the case at bar, to say nothing of Peck's admissions of incompetent driving. True, the jury must have found that Peck was personally free from fault, but in reaching this conclusion they were bound to consider his knowledge and lack of experience with this kind of a car. *Charbonneau* v. *MacRury*, 84 N. H. 501, 510; *Sevigny* v. *Company*, 81 N. H. 311, 312. A finding that Peck did as well as the ordinary man with his qualifications would have done clearly involves no finding that his instructor was similarly free from fault in permitting him to act as he did.

The verdicts in the two cases were not inconsistent and it is therefore unnecessary for us to consider at this time how far, if at all, verdicts which are in law inconsistent can be permitted to stand under the doctrine of *Hewett* v. *Association*, 73 N. H. 556.

The result which we have reached finds support in the following cases in which masters have been held liable for injuries caused by inexperienced drivers who were receiving instruction from their servants. *Easton* v. *Company*, 173 Cal. 199; *Holmboe* v. *Morgan*, 69 Ore. 395; *Opecello* v. *Meads*, 152 Md. 29. In *Wooding* v. *Thom*, 148 App. Div. 21; aff'd 209 N. Y. 583 and *Doyon* v. *Company*, 98 N. J. L. 540 the same result was reached in cases where the defendant's servant permitted a prospective purchaser of an automobile to drive it in the course of a demonstration.

From the foregoing discussion it follows that the defendant's motions for a nonsuit and to set aside the verdict were properly denied, and it is accordingly ordered that there be

*Judgment on the verdict.*

All concurred.