[Civ. No. 10332. Second Appellate District, Division One.—May 7, 1936.]

CARRIE HAWKINSON et al., Respondents, v. A. M. SCHOLZ et al., Appellants.

Albert J. Morrissey, Oscar Collins and Robert R. Ashton for Appellants.

John Coker for Respondents.

DESMOND, J., *pro tem.*—Defendants appeal from a judgment entered upon a jury's verdict, awarding damages for injuries received in an automobile accident. Plaintiff, a nurse stationed at San Diego Navy Hospital, drove to Indio, accompanied by two other nurses, Misses Pipher and Leopold, for the purpose of meeting there Dr. and Mrs. Scholz, appellants in this case. Next morning the entire party breakfasted together at the Indio Hotel and then started for Palm Springs, about twenty miles to the west. Before leaving Indio, Dr. Scholz asked respondent if she knew the road; she told him she had never driven over it, and the doctor then told her to follow him. Miss Leopold rode with Dr. and Mrs. Scholz; respondent followed with Miss Pipher. The party traveled westerly along a well-paved, level highway, wide enough for two cars to pass each other, with shoulders of sand abutting upon this highway on either side. When they had covered about fifteen miles, at about 9 A. M., they approached another car, stuck in the sand by the roadside; both the moving cars stopped, the car in the rear colliding with the forward car, the injuries complained of then and there resulting.

Dr. Scholz testified: "I put out my arm and gave a stop signal and applied the brakes and drew over to the right. . . . I slowed up gradually. I looked in the rear vision mirror to see if Miss Hawkinson was anywhere near me . . . before I applied the brakes. Shortly after the right wheel had left

the highway I received a sudden and severe blow from the rear.''

Respondent, on the other hand, testified that the doctor made a very sudden stop; that no arm signals were given nor any signals indicating any change in the speed of his car. She also testified that she stepped on her brakes as quickly as possible, but that she was too close to Dr. Scholz to be able to stop immediately, although the momentum of her car was lessened before the collision occurred; further, that Dr. Scholz had not changed the direction of his car prior to the accident; that when the collision occurred, ''It was in a direct line with the highway'' while her car at that time ''was turned just a little to the left''; that after the collision Dr. Scholz's car was on the pavement and her own car, about ten feet away, ''was directly behind his, except it was turned a little to the left, just to the middle of it''.

For a distance of three to five miles before reaching the place of the accident, both cars had been rolling along at about 40 miles per hour with a distance of 50 to 60 feet between them. Being asked, ''Did you change the direction of your automobile before the collision occurred?'' respondent answered, ''Well, I was too close; I tried to swing out just a little to the left, but I was too close to miss him.''

█ Appellants claim that the undisputed evidence shows that respondent was guilty of negligence as a matter of law, in that she failed to keep a proper lookout for traffic ahead of her; in that she followed appellant's car too closely; in that she did not have proper control of her car; in her failing to slow down or stop, if necessary, to avoid the collision. Appellants also add, as ground of appeal, errors claimed to have been committed by the court in instructing the jury.

In arguing the first point: negligence on the part of respondent, appellants' counsel rely strongly on *O'Connor* v. *United Railroads of San Francisco*, 168 Cal. 43, 47 [141 Pac. 809], where the court said: ''It must be apparent that in operating a street car over a public street a motorman cannot under ordinary circumstances run down a vehicle proceeding in the same direction without having been negligent in the operation of his car. The mere fact that he does so furnishes cogent evidence of negligence which is rarely capable of explanation.'' That was a case in which, in the year 1909, a street car operating at an unlawful speed on Mission Street,

San Francisco, ran down and overturned a horse-drawn bus driven by plaintiff. There was no evidence that the bus stopped in the path of the car; on the contrary, the bus was in motion at the time the street car overtook it. Appellants there claimed contributory negligence on the part of the bus driver upon his testimony that he did not look back to observe oncoming traffic while traveling, just before the collision, a distance of 500 feet. Upon that point the court said, "Obviously, one cannot be expected to look simultaneously forward and back along the street." This was before the days of rear vision mirrors, such as the one attached to Dr. Scholz's car. The evidence also showed that no warning of the approach of the electric car was given the bus driver by the ringing of the bell or otherwise, while in the instant case Dr. Scholz knew that his car was being closely followed by the car of respondent. Enough has been said, disregarding the locale of the two accidents, to indicate that these are not parallel cases. A case more closely in point with the instant case is *Clendenin* v. *Benson*, 117 Cal. App. 674 [4 Pac. (2d) 616], decided in 1931, involving two motor vehicles, where a truck driver, without signaling for a stop suddenly halted his vehicle in a position on the highway where it was struck by an oncoming automobile, resulting in injury to the latter vehicle, for which damages were awarded. There the driver of the rear car testified, "that the truck driver gave no warning signal, and that when he (the witness) realized that the truck had stopped he applied his brakes, turned the automobile to the left, and that the two vehicles were about 60 feet apart when the truck came to a standstill; further, that he was unable to turn the automobile sufficiently to avoid the collision". We have already stated that in this trial Dr. Scholz testified that he did give a stop signal, but respondent testified to the contrary on this and other important matters immediately incident to the collision. Where a problem arises by reason of a conflict in evidence, it is the jury's right and duty to solve it, not ours. In *Gornstein* v. *Priver*, 64 Cal. App. 249 [221 Pac. 396], a case involving a rear-end collision and cited by appellants and respondent, we find the following: " . . . the mere fact that a vehicle is moving in close proximity to another one ahead of it, and keeping up with it, does not of itself constitute negligence *per se;* but whether in any particular case the operator of the rear vehicle

is negligent if he drives his machine so as to cause a collision with the one ahead depends upon all the circumstances surrounding the happening of the accident, and almost invariably presents a question of fact for the decision of the jury or of the trial judge where, as here, the case is tried without a jury.'' This is a direct application, to a case of rear-end collision of the general rule mentioned in *Collins* v. *Marsh,* 176 Cal. 639, 644 [169 Pac. 389], where the court instructed the jury, ''that, in passing on the issue of negligence, it must take into consideration all the facts and circumstances surrounding the particular transaction''. (See *O'Connor* v. *United Railroads, supra.*) Being instructed, as they were, on the subject of negligence, contributory negligence, ordinary care and other pertinent matters, this jury must be presumed to have considered ''all the facts and circumstances''. When they did so, they decided adversely to appellants all the points which they here contend indisputably establish the plaintiff's negligence as a matter of law. We see no reason, and believe we have no right, under the circumstances, to interfere with the jury's disposition of these matters, submitted to their sound judgment as triers of the facts.

Passing to the other ground of appeal, error in giving instructions, we shall take up the claimed errors *seriatim.* ■
*First,* the court gave the jury an instruction, admittedly correct, upon ''imminent peril''. Appellants contend such an instruction was improper because there was no showing in this case of conditions to make such an instruction applicable. We do not take that view. (See *Wiley* v. *Young,* 178 Cal. 681, 685 [174 Pac. 316]; *Potter* v. *Back Country Transp. Co.,* 33 Cal. App. 24, 26 [164 Pac. 342].) Besides, we note that the instruction complained of reads: ''*If* you find the plaintiff was suddenly put in danger,'' etc., clearly a notice to the jury that the instruction was to be disregarded unless they found a condition of imminent danger arising without negligence on the part of the plaintiff. *Second,* appellants complain because the instruction just mentioned was connected with a preceding instruction by the word ''So''. In considering this objection, we have read the two instructions as one and feel there was no impropriety in connecting the subject-matter of one with the other. ■ *Third,* appellants state that, ''the trial court erred in instructing the jury on

negligence *per se* and omitting the instruction that the negligence must have contributed directly to the injury". Other instructions given by the court supplied the lack here complained of, saving repetition in instructions which is to be commended, and being altogether sufficient to protect the rights of the parties. (*Briggs* v. *Jess Mead, Inc.,* 93 Cal. App. 666, 677 [270 Pac. 263]; *Henderson* v. *Los Angeles Traction Co.,* 150 Cal. 689, 699 [89 Pac. 976]; *Dewhirst* v. *Leopold,* 194 Cal. 424, 431 [229 Pac. 30].) ▉ *Fourth,* appellants claim that prejudicial error arose when the court, in giving the instruction on imminent peril, failed to include the elements necessary to absolve respondent from contributory negligence. However, in the very instruction to which this instruction was connected by the word "So", contributory negligence was properly defined and another instruction was as follows on the subject of negligence: "It is the failure to use ordinary care or skill by one sought to be charged with negligence in the management of his property or person. It is not intrinsic or absolute, but always relates to some circumstance of time, place or persons. Hence, in determining the question of negligence as charged against either of the parties in this action, you will take into consideration all of the circumstances that appear in evidence surrounding the doing of the act which is charged as negligence or the failure to do something which is charged as negligence. Acts which under some circumstances would constitute negligence under other circumstances would not constitute negligence. Ordinary care, as used in these instructions, is the care that ordinarily prudent persons exercise under the same or similar circumstances."

As respondent says in her brief: "The circumstances referred to in these instructions, of course, include circumstances of imminent peril as well as others. There is, therefore, not an absence of instructions on the standard of care of persons in imminent peril."

▉ Appellants also find error in the court's giving the following instruction: "It is unlawful for any person to drive any vehicle upon a highway in so negligent a manner as to indicate either a wilful or a wanton disregard of the safety of persons or property." It is claimed that, "There is nothing in the record, either in the pleadings or evidence, even taking the testimony of the plaintiff as the absolute

truth, which by any stretch of the imagination could be construed as reckless driving or a wilful or wanton disregard of the safety of persons or property by the appellant.'' A reference to the plaintiff's testimony, applied to conditions surrounding the accident, summarized at the beginning of this opinion, refutes this contention.

Judgment affirmed.

York, Acting P. J., and Doran, J., concurred.