[L. A. No. 4020. Department One.—June 19, 1917.]

# HARRY H. COOK, Respondent, v. HARRY MILLER, Appellant.

NEGLIGENCE—AUTOMOBILE—CUTTING ACROSS STREET CORNER—VIOLATION
OF ORDINANCE.—In the absence of any necessity, it is legal negligence
for the driver of an automobile, when turning from one street into
another, to "cut across the corner," in violation of a city ordinance
requiring him to pass around to the right of and beyond the center
of the street intersection.

ID.—MOTORCYCLE—PASSING VEHICLE ON WRONG SIDE.—It is also negli-
gence for the driver of a motorcycle, in overtaking and passing a
vehicle on the street, to pass to the right of such vehicle, in violation
of the ordinance requiring him to pass to the left.

ID.—COLLISION RESULTING FROM CONCURRENT NEGLIGENCE OF DRIVERS OF
VEHICLES—PROXIMATE CAUSE.—Where a collision occurred between
a motorcycle and an automobile while the respective drivers thereof
were so violating the ordinance, and would not have occurred had
either of them observed the ordinance, the accident was the result of
their concurrent negligence, and the negligence of each was a proxi-
mate cause of and contributed to an injury resulting from the
collision.

CLXXV Cal.—32

Id.—Crossing Blind Corner at Excessive Speed.—The driver of a motorcycle on a city street is guilty of negligence in crossing an intersecting street, where his vision of persons traveling thereon was obstructed, at a rate of fifteen miles an hour, or twenty-two feet per second.

Id.—Ordinance Fixing Maximum Speed.—An ordinance fixing the maximum speed at which vehicles may travel on the city streets is not a license to go at that speed at all times and places. The care required at any place on a public street is always that of a reasonably prudent person under the circumstances, and occasions may arise when a speed far below the maximum would constitute negligence.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order refusing a new trial. Louis W. Myers, Judge.

The facts are stated in the opinion of the court.

U. T. Clotfelter, and F J Heid, Jr, for Appellant.

E. S. Janes, for Respondent.

SHAW, J.—Plaintiff recovered judgment against defendant for damages to his person and to his property. The defendant's motion for new trial was denied. The appeal is from the judgment and from an order denying the motion for new trial. The appeal was mistakenly taken to the district court of appeal of the second district, which court, discovering the mistake, transferred it to this court.

The damages were caused by a collision between a motorcycle which plaintiff was riding and operating and an automobile driven by the defendant. It occurred in the city of Los Angeles at the intersection of Washington Street, running east and west, and Griffith Avenue, running north and south. The complaint alleges that the injuries which caused the damages were the result of the negligence of the defendant. The answer alleged contributory negligence on the part of the plaintiff. It cannot be seriously disputed that the evidence is sufficient to support the finding that the defendant's negligence was a proximate cause of the injury. The principal point made in support of the appeal is that the evidence showed that the plaintiff was also negligent in operating his motorcycle at the time of the collision, and that his

negligence contributed to his injury and was one of the proximate causes thereof.

There was at that time an ordinance of the city of Los Angeles in force regulating the use and operation of vehicles, including motorcycles and automobiles, on the streets, in effect as follows: The person driving such vehicle on the street was required to do so "in a careful manner and with due regard for the safety and convenience of pedestrians or other vehicles on such street." (Section 5.) In overtaking and passing another vehicle on the street he was required to pass to the left of such vehicle and not to drive again to the right until he was clear of such vehicle. (Section 8.) He was required to travel on the right-hand side of the street and as near the curb as possible. (Section 6.) In turning from one street into another he was to pass around to the right of, and beyond the center of, the street intersection. Vehicles traveling upon a street running northerly and southerly had the right of way over vehicles traveling upon a street running easterly or westerly. A driver of a vehicle running on an easterly or westerly street was required to allow the other vehicle such right of way. (Section 40.) The speed limit was fixed at not exceeding twenty miles an hour in the district embracing the place of collision. There does not appear to be anything in the ordinance requiring the sounding of a bell, gong, or horn at an intersection, although it does require such vehicles to have a bell, gong, or horn attached and in good working order.

The plaintiff was going east on his motorcycle along Washington Street toward the intersection of Griffith Avenue, intending to cross the same. The building of the Berlin Dye Works occupied, up to the property line, the corner to the plaintiff's right, fronting north on Washington Street and east on Griffith Avenue. Along the Washington Street curb line in front of this building there were four or five auto trucks, twelve feet long, belonging to the dye works, backed up against the curb. These trucks had canopy tops. The easterly truck was about fifteen feet west of the corner. As he neared the corner, plaintiff saw that it was a "blind corner," that is, that his vision of persons coming up the avenue from the south was obstructed. A laundry wagon, drawn by a horse, trotting slowly, was ahead of plaintiff going in the same direction. As the wagon entered upon the intersection, the plaintiff was a little behind it and he swerved to

the right to pass, instead of to the left, as the ordinance required. The defendant came up on Griffith Avenue from the south at that moment, cutting across the intersection instead of going around to the right of the center of the intersection, as the ordinance required. Defendant was slowing down because the laundry wagon was going east in front of him and obstructed his passage momentarily. Plaintiff was going at the rate of fifteen or sixteen miles an hour, according to his own "estimate." The plaintiff, while on his swerve to the right, and as he was passing the easterly truck, first saw the automobile and at once swung to the left to avoid it, but, as he testified, "it was too late," and the two vehicles collided. The automobile, at the instant of collision, had come practically to a standstill. It was pointed to the northwest and the laundry wagon had passed a little to the east. The front end of the motorcycle struck the front of the automobile diagonally. The plaintiff was pitched over three or four feet to the left toward the middle of the street and received cuts and bruises. The front right spring of the automobile was twisted around toward the right to an angle of nearly forty-five degrees by the force of the collision. The plaintiff testified that when he saw the automobile and tried to get out of the way by swinging to the left, "it [the automobile] was on me in a second and I had no time." The foregoing is taken from the testimony of the plaintiff, supplemented by other uncontradicted evidence.

The defendant was under no necessity of "cutting across the corner." The ordinance required him to go around to the right of the intersection, and it was legal negligence for him to do otherwise under the circumstances. (*Cragg* v. *Los Angeles Trust Co.*, 154 Cal. 667, [16 Ann. Cas. 1061, 98 Pac. 1063]; *Harrington* v. *Los Angeles Ry. Co.*, 140 Cal. 519, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15].) The plaintiff was also violating the ordinance in swerving to the right to pass the laundry wagon instead of to the left. The field, he said, was clear, except for the laundry wagon, at the time he started to make the swerve. If he had not passed to the right of the wagon he would not have struck the automobile. So, also, if the defendant had turned the corner by going to the right of the intersection, his automobile would not have been struck by the motorcycle. The disobedience of the ordinance by both of them brought on this accident. It was the

result of their concurrent negligence, the negligence of each was a proximate cause and each contributed to the injury.

Nor can it be said that plaintiff was free from negligence in crossing the intersection at a "blind corner," such as this, at the rate of fifteen miles an hour, or twenty-two feet per second. The cause of plaintiff having no time to avoid the collision was not the speed of the automobile, for it had come practically to a stop at the instant of the collision. It was his own speed that shortened his time. The force of the impact broke the fastenings of the automobile springs, twisted them far to one side, as above stated, and carried the plaintiff several feet forward, landing him on the street, as he said, three or four feet to the right of the automobile. It is a strong probability, from these circumstances, that his "estimate" of his speed was much too low, but in view of the findings of the court we must accept his estimate as correct. A horse can travel at the rate of fifteen miles an hour, and even faster, for a short time. But in the days of exclusively horse-drawn vehicles one who crossed a street at such a place going at fifteen miles an hour would have been considered reckless. There have been city ordinances forbidding a team from crossing a street intersection faster than a walk. (*Stein* v. *United Railroads,* 159 Cal. 371, [113 Pac. 663].) Since our eyes have become somewhat accustomed to greater speed, the recklessness of fifteen miles an hour may not seem so obvious, but the danger is the same. The ordinance fixing the maximum speed at twenty miles an hour is not a license to go at that speed at all times and places. (*Irwin* v. *Judge,* 81 Conn. 492, [71 Atl. 572].) The care required at any place on a public street is always that of a reasonably prudent person under the circumstances. (*Scott* v. *San Bernardino etc. Co.,* 152 Cal. 610, [93 Pac. 677].) There are occasions when a speed far below the maximum would constitute negligence. The ordinance recognizes and provides for this by requiring every person driving on the streets to do so "in a careful manner and with due regard for the safety" of other persons on the street. A speed which carries a person twenty-two feet in one second of time at a "blind corner," with standing auto trucks projecting twelve feet into the street, obstructing the vision of the intersecting street until the last truck is reached, and with a wagon ahead of him, is not that speed which a person exercising ordinary prudence would choose

at such a place, out of due regard for his own safety or that of others. Such speed may not be unusual at the present time, even under similar circumstances. But the person who receives an injury from a collision, while going at that rate under the conditions here existing, should not expect the other person to pay him the damages caused thereby.

The judgment and order are reversed.

Victor E. Shaw, J., *pro tem.*, and Sloss, J., concurred.