[L. A. No. 5318.   Department Two.—November 17, 1919.]

F. C. SQUIER, Respondent, v. DAVIS STANDARD BREAD COMPANY (a Corporation), et al., Appellants.

[1] NEGLIGENCE — COLLISION BETWEEN MOTORCYCLE AND DELIVERY WAGON—RATE OF SPEED OF MOTORCYCLE—EVIDENCE.—In an action for personal injuries sustained from a collision between plaintiff's motorcycle and defendant's delivery wagon at a street intersection, it cannot be held as a matter of law that plaintiff was guilty of negligence by reason of traveling at an excessive rate of speed, where the evidence indicates that he was not traveling at much over ten miles an hour.

[2] ID.—PASSING OF DEFENDANT'S WAGON—FAILURE TO SOUND HORN—EVIDENCE.—It cannot be held as a matter of law in such an action that plaintiff was guilty of negligence by reason of failing to sound his horn before attempting to pass the delivery wagon going in the same direction, where the jury might well have found that there was an absence of intent to make an immediate attempt to pass.

[3] ID.—APPROACH OF VEHICLE FROM REAR—SITUATION OF PERIL—TURNING TO RIGHT.—It is not negligence to turn to the right of a vehicle, which is being approached from the rear, if a situation of peril is presented in which to avoid a possibility of injury to life or property a reasonably careful man might well consider it the more prudent course to drive to the right.

[4] ID.—PERILOUS SITUATION OF PLAINTIFF—EVIDENCE.—In this action there was sufficient evidence to warrant the jury in finding that plaintiff was confronted by such a situation of peril when he turned to the right of defendant's wagon.

[5] ID.—TRAFFIC ORDINANCE—TURNING INTO ANOTHER STREET—CONSTRUCTION OF PROVISION.—Under the section of a city traffic ordinance providing that the driver of any vehicle in or upon any street shall, in turning to the left into another street, pass to the right of and beyond the center of the street intersection before turning, it is not the mere passing of the center of intersection on the driver's right which is rendered unlawful, but the very turning itself from the moment of its beginning.

[6] ID.—NEGLIGENCE OF PLAINTIFF—PROXIMATE CAUSE OF INJURY—INSTRUCTION.—An instruction that if plaintiff's negligence was "the proximate cause" of the injury the verdict should be against him, was not misleading, where the sentence containing such words was immediately preceded by a sentence requiring the jury to determine whether plaintiff's negligence, if any, was "a proximate cause" of the injuries received by him, and the jury was fully and correctly instructed on the law of contributory negligence.

APPEAL from a judgment of the Superior Court of Los Angeles County. Curtis D. Wilbur, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hickcox & Crenshaw for Appellants.

Clyde C. Shoemaker and George H. Woodruff for Respondent.

LENNON, J.—This is an action to recover for personal injuries sustained by plaintiff when the motorcycle upon which he was riding collided with a horse-drawn delivery wagon owned by the defendant corporation and driven by defendant Masters. Plaintiff had judgment and defendants appeal.

From the plaintiff's evidence it appears that just prior to the accident the two vehicles were proceeding in an easterly direction along Vernon Avenue in the city of Los Angeles at a point near to the intersection of that avenue with Ascot Avenue. The motorcycle upon which plaintiff was riding was a short distance behind the wagon, and, a few seconds prior to the collision, it was moving at a speed of fourteen miles an hour. Plaintiff testified that he intended to stop at the corner to permit a car to pass on Ascot Avenue, from which, in view of all of the circumstances, it might fairly be inferred that he had no immediate intention of passing the wagon. It also appears from plaintiff's testimony, that the defendant Masters, although aware of plaintiff's approach, without the warning required by ordinance, turned his horse's head sharply to the left as though about to turn north into Ascot Avenue, keeping the center of intersection of Ascot Avenue and Vernon Avenue on his right, but that, instead of keeping on in this course, he stopped and backed the vehicle. Plaintiff, seeing the horse start to turn and fearing that he would not be able to veer sharply enough to the left to avoid striking the horse, made a sharp turn to the right and in so doing struck the right hind wheel of the wagon and fell, sustaining the injuries complained of. The evidence indicates that he was not at the time traveling at much over ten miles an hour. It also appears that at the moment of the collision the head of

·the horse was a few feet out into Ascot Avenue and a few feet to the right of the center line of Vernon Avenue, the equipage heading in a northeasterly direction at an angle of about forty-five degrees ·from the line of the direction of Vernon Avenue.

In the face of this evidence, appellants contend that the court should have held as a matter of law that plaintiff was guilty of negligence by reason of traveling at an excessive rate of speed, by reason of failing to sound his horn and by reason of attempting to turn to the right of the vehicle with which he collided. [1] The record discloses no justification for the contention that plaintiff was traveling at a rate of speed which amounted to negligence as a matter of law. [2] Under the State Motor Vehicle Act it was, of course, plaintiff's duty to sound his horn before attempting to pass the wagon, but the jury might well have found that there was no such duty prior to the collision by reason of absence of intent to make an immediate attempt to pass. [3] Finally, it is not negligence to turn to the right of a vehicle, which is being approached from the rear, if a situation of peril is presented in which to avoid a possibility of injury to life or property a reasonably careful man might well consider it the more prudent course to drive to the right. [4] There was sufficient evidence to warrant the jury in finding that plaintiff was confronted by such a situation of peril when he turned to the right of defendants' wagon.

It is next contended that the court erred in giving the following instruction on the traffic ordinance of the city of Los Angeles: "Section twelve provides that the driver of any vehicle in or upon any street shall, in turning to the left into another street, pass to the right of and beyond the center of the street intersection before turning. Under the provisions of this ordinance, if you find from the evidence that the defendant driving the delivery wagon in question intended to and started to turn from Vernon Avenue, proceeding easterly, into Ascot Avenue, proceeding northerly, the court instructs you that it was his duty to pass to the right of the point which indicates the center of the intersection of those streets, and if you find from the evidence that the defendant was making this turn with the intention aforesaid, and that he did not pass to or beyond

the center of the intersection of these streets, keeping the center on his right, then you will find that he was guilty of negligence, and if you find that such negligence was *the proximate cause* of the injuries to plaintiff, and that plaintiff was not guilty of negligence proximately causing his own injuries, then the verdict shall be in favor of the plaintiff.'' It is urged that the intent of defendant Masters was absolutely immaterial; that the section of the ordinance here in question can be violated only by an actual turning into another street, and that such turning is not accomplished until some portion of the equipage has passed the center of intersection of the two streets.

[5] The court's instruction did not make defendants' violation of the ordinance depend solely upon the intent of defendant Masters. It merely made the intent, and properly so, an essential element in determining whether or not Masters was, as a matter of fact, turning into Ascot Avenue. If his sudden and sharp change in direction was made with another and lawful purpose, there was, of course, no violation of the statute. If, however, his purpose was to proceed into Ascot Avenue and he started at an angle which would place the center of intersection on his right, it is not open to dispute, we think, that he was violating the ordinance from the moment he commenced to turn. It is not the mere passing of the center of intersection on the driver's right which is rendered unlawful by the ordinance. It is rather the very turning itself from the moment of its beginning. To construe the ordinance otherwise would be to permit the driver of a vehicle to turn suddenly and sharply to the left at an intersection as often as he might please so long as he changed his mind in time to crowd back into the stream of traffic before any part of his vehicle crossed the center line of the street. Such a construction would be unreasonable and would utterly destroy the purpose and effect of the statute.

Appellants also contend that the grammatical construction of the instruction is such as to make the words ''keeping the center on his right'' misleading and confusing. This is a clear instance of hypercriticism.

The court, after charging as to the duty of the driver of an overtaking vehicle to sound an audible signal before passing a vehicle proceeding in the same direction and after

instructing the jury that if plaintiff was under such a duty and failed to sound his horn he was guilty of negligence, continued to the effect that if such negligence was found to be "the proximate cause" of the injury the verdict should be against the plaintiff. Appellants insist that the use of the article "the" instead of the article "a" before the words "proximate cause" constituted reversible error. The sentence containing the objectionable words is immediately preceded by a sentence requiring the jury to determine whether plaintiff's negligence, if any, was "*a* proximate cause" of the injuries received by him. Moreover, the jury was elsewhere fully and correctly instructed on the law of contributory negligence. [6] Considering the instructions as a whole, we consider the possibility that the jury could have been misled by the error complained of so remote as to be altogether unworthy of serious consideration.

Error is claimed in the refusal of the trial court to give certain instructions offered by appellants. These instructions embody appellants' theory of the law of the case which we have held to be erroneous.

The judgment is affirmed.

Melvin, J., and Angellotti, C. J., concurred.