[Civ. No. 7029. Second Appellate District, Division Two.—February 5, 1932.]

A. F. FLOOD, Respondent, v. M. S. MIURA, Appellant.

W. I. Gilbert for Appellant.

Richard A. Dunnigan for Respondent.

FRICKE, J., *pro tem.*—Defendant appeals from a judgment awarding damages for personal injuries resulting from a collision about 4 o'clock P. M. on April 12, 1929, between the motor-truck of appellant and a motorcycle ridden by respondent. Prior to the collision respondent was proceeding north on San Pedro Street in the city of Los Angeles and appellant's truck was going in a westerly direction on East Ninth Street and toward the intersection of that street with San Pedro Street. While there was no proof that they were there placed in compliance with any ordinance, the record discloses that on San Pedro Street and at a point 32 feet south from the southeast corner of the intersection and also on East Ninth Street at a point 74 feet east of the intersection there were located mechanical traffic signals changing from "Go" to "Stop" and so on. Traffic buttons, four in number, were placed at approximately the intersection of the center lines of each of the streets by a prolongation of the property lines at right angles thereto. It was stipulated that the location was a business district. Respondent, riding on his motorcycle in a northerly direction, was about 80 feet south of the intersection where the button was located when the signal changed to "Go", and entered the intersection at a speed of about 10 miles an hour, riding just east of the center line of San Pedro Street with three lines of traffic to his right and these lines of traffic moved with him about seven feet and when he arrived at the traffic button, appellant's truck was seven feet ahead of him and immediately thereafter the collision occurred. It also appears that appellant's truck was about 100 feet east of the signal on East Ninth Street near the northeast corner of the intersection when the first bell rang and the signal there changed from "Go" to "Stop", and that the second bell rang before the truck entered San Pedro Street and that the San Pedro Street signals did not change from "Stop" to "Go" until after the first or at the time of the second bell. The truck made a left-hand turn after it entered the intersection and according to some of the testimony was traveling at the rate of about 20 miles per hour up to the time of the collision. As is natural in cases of this character, there are differences and conflicts between the various witnesses as to speed, distance and locations, and it was for the jury to

determine the facts. ▮ There is evidence in the record
to warrant the conclusion that, after the ringing of both
bells and the Ninth Street signal which the truck was ap-
proaching having turned to "Stop" and the signal ahead
of the motorcycle and other traffic on San Pedro Street
having turned to "Go", the motorcycle and the automobiles
to its right entered the intersection, and that thereafter the
truck entered the intersection coming from the east, made
its left turn and had nearly completed it when the collision
occurred. Not only the testimony as to the speed of the
truck but the far greater distance traveled by the truck as
compared to the distance covered during the same period
by the north-bound traffic, bearing in mind the evidence
that the latter traffic entered the intersection before the
truck, fully warrants the conclusion that the truck while in
the intersection was exceeding the speed limit of 15 miles
per hour. The record also warrants the conclusion that the
motorcycle and the cars to its right were traveling at a rate
less than 15 miles per hour while in the intersection.

▮ Appellant's contentions that respondent entered the
intersection before the traffic signal changed to "Go" and
at a rate of speed greater than that prescribed by the
statute, and that appellant's truck had the right of way,
cannot be urged here as those questions of fact were deter-
mined adversely to his contention and the findings by the
verdict are supported by evidence in the record. Neither
can we agree that the rate of speed of 10 miles per hour
was unreasonable and negligent. This point, in support of
the claim that the record shows contributory negligence as a
matter of law, is predicated on the theory that respondent
was proceeding across the intersection "when his view was
obstructed as to westbound vehicular traffic in the inter-
section". While there may be other interpretations based
on conflicting testimony, the evidence seems to indicate that
the course or route pursued by the truck in making its
turn was along a curve from the most easterly traffic
button toward the most southerly button. While appel-
lant's brief gives a reference to the transcript as sustaining
his contention that respondent's view of the traffic on East
Ninth Street was obscured by the automobiles traveling on
his immediate right, the transcript shows that the respond-
ent, at the time the signal ahead of him changed to "Go",

looked to the east and west to observe whether there was any traffic and at that time the intersection was clear of all traffic, that the closest machine to his right at the time respondent crossed the property line was "almost opposite me", and that, while respondent could not see the truck before he came up to the property line because until he arrived there the other machines were ahead of him, he did see the truck which was then seven feet in front of him when his motorcycle arrived at the property line, and according to appellant "the collision took place approximately ten feet south of the southerly street, (curb) line of East Ninth street extended across San Pedro street". Appellant's principal point is that respondent was guilty of contributory negligence as a matter of law. While our Supreme Court has held in *Rush* v. *Lagomarsino,* 196 Cal. 308, 317 [237 Pac. 1066], that the driver of a motor vehicle, acting lawfully, is bound to anticipate that he may meet persons on the highway in order to avoid the charge of negligence and has no right to assume that the road is clear, the case also quotes and follows *Reaugh* v. *Cudahy Packing Co.,* 189 Cal. 335, 340 [208 Pac. 125, 127], to the effect that the duty the driver owes is that of keeping a proper lookout and keeping his machine under such control "as will enable him to avoid a collision with another person *using proper care* and caution". (Italics ours.) The case is, therefore, not authority, where, as here, the other person negligently precipitates himself into the path of the driver who is charged with a want of ordinary care. Neither is the case of *Truitner* v. *Knight,* 83 Cal. App. 655 [257 Pac. 447], in point for that case holds that where the driver in question was proceeding within the speed limit, it was a question of fact for the jury whether he was driving his machine with the degree of care and caution required by section 113 (a) of the Vehicle Act, which section is declared to be but a reiteration of the rule which has always been in force that drivers of motor vehicles must be specially watchful in anticipation of the presence of others at places where other vehicles are constantly passing. As there is evidence that respondent was proceeding at a lawful speed the question here was, under this statement of the rule, one for the jury and it must also be noted that while the rule as stated in the quotation from *Reaugh* v. *Cudahy Packing*

*Co., supra,* refers to "places where other vehicles are constantly passing" there is evidence in the case at bar that the intersection was observed by respondent and found to be clear. The case of *Cook* v. *Miller,* 175 Cal. 497 [166 Pac. 316], is not in point for there the driver violated a specific ordinance in entering the intersection and his view was obstructed by a wagon ahead of him which he passed on its right side in violation of law, factors which must be considered when analyzing the conclusion there reached that a speed of 15 miles an hour in entering a "blind corner" would constitute contributory negligence. We might add that in the case at bar the jury was warranted in finding that the speed of the motorcycle was only 10 miles per hour.

While this court cannot take judicial notice of any ordinance governing either the traffic signals or an intersection so equipped or even that such signals were there established by an ordinance, it does not follow that the evidence as to the ringing of a first and second bell and the display of "Stop" and "Go" signals cannot be considered in connection with the questions of negligence and contributory negligence. The fact is that there were at the intersection signals which changed at intervals so that those facing north and south read "Go" while those facing east and west read "Stop" and that a bell rang when a signal turned to "Stop" and that a second bell rang when the opposite signals turned to "Go". The presence of such signals, known as it was to respondent, would naturally lead him to the conclusion as a reasonable man, that, when the signal ahead of him read "Go" at the ringing of the second bell, it was safe to proceed and the signals on the intersecting street having turned to "Stop" at the first bell, it was also reasonable for him to believe that its warning would be heeded by the drivers of vehicles approaching such stop signal, particularly where, as here, after the signal had changed to "Go" he looked to the east and west to see if any traffic was coming and saw that the intersection was clear of all traffic. Under these circumstances there was nothing to indicate to him that appellant's truck would or might ignore the "Stop" signal and inject itself into the intersection. In effect, appellant is urging that, since thereafter one or more of the cars on

respondent's right obstructed his view so that he did not see the truck until it loomed up in front of him, he was guilty of contributory negligence because he did not stop or slow down. As he was traveling at less than the speed limit of the intersection and was justified in believing that the east and west traffic had stopped, and as there is nothing to indicate that there was any slackening of the speed of the vehicles on his right such as would indicate any possible object ahead of them, there was nothing to even suggest to him there was any occasion for reducing his speed. Surely, pursuing his course over a highway clear of traffic when he observed it a second before, the driver of the motorcycle was not guilty of a failure to use ordinary care in acting on the assumption that the drivers of vehicles approaching the intersection from the east on Ninth Street would exercise due care for their own safety and would not, in the face of a "Stop" signal and after the traffic had started north on San Pedro Street, drive virtually head-on toward such traffic.

The principles here involved are not without precedent. In the case of *Sites* v. *Howrey,* 108 Cal. App. 348 [291 Pac. 597], the plaintiff was riding in an automobile driven by her husband. Defendant's automobile was traveling on a street at right angles to that of plaintiff's husband. The latter car entered the intersection first and was traveling at the lawful speed of 15 miles per hour had the right of way and, when 50 feet from the intersection, the driver, plaintiff's husband, saw the defendant's car 200 feet from the intersection going at a speed of about 35 miles per hour. A building on the corner obstructed the view of the respective drivers. The court in its opinion approves the rule as stated in *White* v. *Davis,* 103 Cal. App. 531, 542 [284 Pac. 1086, 1091], ''The question of whether a given state of facts constitutes contributory negligence, as a matter of law, or whether it is a matter that should go to the jury, as a question of fact, is often a close one. The solution depends upon the existing circumstances in each particular case. Unusual circumstances may determine in a given case whether or not reasonable minds might legitimately draw different conclusions on the question of negligence. There seems to be a general rule running through the case where a pedestrian, or one standing on a highway,

is injured by an automobile, which usually determines whether the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, where he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks, but does not see an approaching automobile, or seeing one, erroneously misjudges its speed or distance, or for some reason assumes he could avoid injury to himself, the question is usually one for the jury." The court then quotes from *Robinson* v. *Clemons,* 46 Cal. App. 661, 664 [190 Pac. 203, 204], "Anyone, the most careful, about to cross a highway and observing another automobile approaching at a distance of from 100 to 150 feet would not deem it necessary to stop or to do any particular thing to avoid a collision. He would properly assume and have a right to assume that the other car was not violating all rules of prudence by excessive speed; and that he had plenty of time to cross and act accordingly. This would be the attitude of any reasonable man under the circumstances, and, therefore, the plaintiff was not guilty of a want of ordinary care in pursuing his journey." The case of *Skaggs* v. *Wiley,* 108 Cal. App. 429 [292 Pac. 132, 133], is in many respects similar to the case at bar. There the corner was obstructed by buildings so that plaintiff's view of the traffic along the intersecting street during the last 100 feet of his approach to the intersection was not clear and uninterrupted for a distance of 200 feet to the right or left of the intersection and when the plaintiff first saw defendant's automobile he was about 25 feet from the intersection and defendant's automobile was about 65 feet from the intersection. It did appear, however, that the plaintiff there, according to his own testimony, exceeded the speed limit for an obstructed crossing by traveling at a speed of 18 miles per hour. The defendant's speed was fixed by some testimony as high as 40 miles per hour. The court said, "Granting that the speed of the plaintiff's automobile was 3 miles per hour in excess of that permitted by the statute, it does not follow with certainty that this proximately contributed to his injury. In view of the excessive speed of the defendant and the other circumstances shown, the court might reasonably have

concluded that the sole proximate cause of the collision was defendant's negligence, and had plaintiff been traveling at the speed allowed by law the collision would nevertheless have occurred and he would not have escaped injury. Under all the circumstances the question was one for the trial court.''

In the recent case of *Page* v. *Mazzei*, 213 Cal. 644 [3 Pac. (2d) 11, 12], the Supreme Court, dealing with a collision between automobiles in an obstructed intersection, approves and adopts the language of *Couchman* v. *Snelling*, 111 Cal. App. 192 [295 Pac. 845]. ''Where a car has actually entered an intersection before the other approaches it, the driver of the first car has the right to assume that he will be given the right of way and be permitted to pass through the intersection without danger of collision. He has the right to assume that the other driver will obey the law, slow down and yield the right of way, if slowing down be necessary to prevent a collision. (*Keys* v. *Hawley*, 100 Cal. App. 53, 60 [279 Pac. 674].) Nor is a plaintiff required to yield the right of way to one a considerable distance away whose duty it is to slow down in crossing an intersection. (*Whitelaw* v. *McGilliard*, 179 Cal. 349 [176 Pac. 679].) Whether or not, therefore, plaintiff after observing the approach of defendant's car, its position and the rate of speed it was traveling and keeping the same within his side vision, was justified in proceeding upon his rightful way in advance of defendant presents a question upon which reasonable minds may differ and was therefore one for the jury to determine (citing cases).'' This quotation is again adopted in *Leblanc* v. *Coverdale*, 213 Cal. 654 [3 Pac. (2d) 312].

The evidence in the case at bar is such that, even viewing it most favorably to appellant, different conclusions can rationally be drawn as to whether the respondent was guilty of contributory negligence or whether his conduct was that of the ordinarily prudent and cautious individual. The jury has decided this question of fact adversely to appellant and their conclusion is final. It follows that there was no error in the refusal of the trial court to instruct the jury to return a verdict for the defendant.

The final point of appellant is that the court erred in including in one of its instructions defining contributory

negligence the words that "like negligence, it must proximately cause injury before it can bar a right to recovery". Appellant declares that this instruction indirectly states that, even if plaintiff was guilty of negligence not a proximate cause of the injury, such negligence would not bar his right to damages and contends that this is not the law.

He also complains that the court did not instruct the jury upon the law relating to proximate cause. The answer to the latter point is that, if appellant desired a further definition of this term or a more extended statement of the law he should have requested such instructions and in the absence of such a request he cannot complain, especially since the word "proximately" is used in at least eight of the instructions on contributory negligence given to the jury at his request.

Appellant argues that it is not the law that, before it can bar a recovery, contributory negligence must be the proximate cause of the injury. We concede this, but it must be noted that the instruction before us merely declares that contributory negligence must proximately cause the injury to constitute a defense. There is a distinction between a statement that the contributory negligence was *the* proximate cause of an injury and a statement that it proximately caused the injury; in the first instance the language implies that the negligence was the sole cause while the latter merely implies that the negligence was such that, unbroken by any new and independent cause, it produced or contributed to the injury and without which the injury would not have been suffered. In other words negligence cannot be contributory without also being proximate. In *Straten* v. *Spencer*, 52 Cal. App. 98 [197 Pac. 540, 543], the court quotes from Thompson's Law of Negligence, "In order then to prevent a recovery by reason of contributory negligence, the plaintiff or person injured must have been guilty of a want of ordinary care; and we shall now see that this want of ordinary care must have been a proximate cause of the injury and not a remote cause or mere condition. . . . " (See, also, *Squier* v. *Davis Standard Bread Co.*, 181 Cal. 533, 537 [185 Pac. 391].) While appellant relies upon this case of *Straten* v. *Spencer, supra,* it must be distinguished from the case at bar because there the instruction under attack declared that there could be no recovery

"unless the plaintiff was free from negligence that contributed to the injury *and was proximate cause thereof.*" Interpreting the portion italicized, the court says (p. 106), "True the court did not use the definite article, but to declare negligence to be 'proximate cause' necessarily implies that it is the only proximate cause." In the case at bar the language used cannot be metamorphosed into a declaration that such negligence must be "the" proximate cause. The instruction was a correct statement of the law and properly included the limitation that negligence of the injured party, such as would bar a recovery must be a proximate, as distinguished from a remote, cause of the injury.

The judgment is affirmed.

Works, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 4, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 4, 1932.