[Civ. No. 2394.   Fourth Appellate District.—August 15, 1940.]

HENRY W. BRAMBLE et al., Appellants, v. JOHN M. McEWAN, Respondent.

Atherton & Atherton and Dempster McKee for Appellants.

Wright, Monroe, Harden & Thomas for Respondent.

GRIFFIN, J.—This action was instituted by the plaintiffs and appellants to recover damages for the death of their daughter, Alice Bramble, who was killed as the result of an automobile accident. The deceased was riding as a guest in a 1928 Erskine sedan automobile which was being driven west on Moorland Drive, in Crown Point, San Diego, on a Sunday, about 3:30 P. M., by her friend, Mrs. Hathaway. Defendant and respondent was driving a 1938 Oldsmobile sedan automobile in a southerly direction on Ingraham Street, which street is the extension of the causeway road which crosses Mission Bay. The vehicles collided at the intersection of the two streets.

It was conceded at the trial that the deceased, being a guest in the automobile, was not to be held responsible for any negligent act or omission on the part of the driver of the car in which she was riding. Although the defense of contributory negligence had been pleaded, this defense was specifically withdrawn at the trial. The sole issues for the determination of the jury, therefore, were whether the respondent was guilty of negligence which was a proximate cause of the accident and, if so, what damages should be awarded. The cause was tried by a jury which returned its general verdict in favor of respondent. This appeal was taken from the judgment.

Ingraham Street, extending north and south, carries the main traffic between Pacific Beach and the causeway, while Moorland Drive is a street seldom used. The place of the accident is a 45-mile zone. Ingraham Street makes a jog to the east as it crosses Moorland Drive, the jog being to the extent that the east curb line of Ingraham Street to the north, if extended, would be about the center of Ingraham Street to the south. Both streets are paved. Just north of the intersection the width of Ingraham Street is 52 feet and just south of the intersection it is 45 feet. Moorland Drive is 30 feet wide. The center white dividing line in Ingraham Street north of Moorland Drive terminates just a few feet north of the intersection and again appears a similar distance just south of the intersection. There are no buildings to obstruct the view in any direction, and cars coming from either direction are visible for a considerable distance. Mrs.

Hathaway, the driver of the car in which deceased was riding, testified on behalf of the appellants, and her testimony may be summarized briefly as follows:

She was driving westerly on the right-hand side of Moorland Drive at a moderate rate of speed, not to exceed 20 miles per hour. She looked but did not see the automobile driven by the respondent until just at the instant she collided with it. She stated that although driving west, she was not bothered by the sunlight; that her windshield was clean and that there was nothing to interfere with her vision; that there was no car in the intersection when she started into it; that she saw the respondent's car just at the instant of the collision; that she became unconscious; that she did not apply her brakes, and to her knowledge she did not swerve her automobile. She made no statement as to what portions of the automobiles came together, as to whether her automobile struck that of the defendant or whether the automobile of the defendant struck hers.

Respondent was called to the stand under section 2055 of the Code of Civil Procedure and testified that he had traveled Ingraham Street frequently on his way from his residence to his place of work; that he was familiar with the intersection and its surroundings and with the "slow" sign which was erected at the southwest corner of the intersection; that he first saw the other automobile to his left when he was something between 200 and 250 feet north of the intersection, at which time the other car appeared to him to be about 275 feet distant from the intersection; that as he approached the intersection the Erskine car was in his view at all times except for a period of perhaps 50 feet, when it was obscured by a stone pillar which is approximately 75 feet from the intersection; that the Erskine car apparently did not change its speed as it approached the intersection; that as he approached the intersection he was driving at between 20 and 25 miles an hour; that the other car appeared to be driven in a normal manner; that before he had approached the intersection he had been driving at about 30 to 35 miles per hour, but as he crossed a dip about a block north of the intersection he reduced his speed to 20 or 25 miles; and that as he approached the intersection he was also watching the street ahead and to the right. He stated that there appeared nothing particularly to call his attention to

the other automobile. He made the statement that it was the only car which might "bother" him. He explained this statement by saying that by the use of the word "bother" he meant that it was the only car in sight at the time.

A Mr. Boland testified that he met the respondent some distance north of Moorland Drive and recognized him; that he estimated that the respondent was then driving at between 30 and 35 miles per hour about half a mile north of the intersection.

McEwan testified relative to the jog in the street that it was of such nature that a person driving south must swerve close to the center of the street to pass around the jog, otherwise a car proceeding straight ahead would run into the curbing at the southwest corner of the intersection; that from his observation of the approaching automobile he didn't expect that the cars would arrive at the intersection at the same time; that he thought he would proceed through the intersection without any interference and did not anticipate that a collision would occur; that as he entered the intersection he looked ahead and also to the right; that he thought "everything was in order, that I would go through as I generally do and she would proceed with her own business". He stated that when he entered the intersection he discovered that she was not stopping and "the situation changed faster than I can explain to you. The impact occurred and I was in the dirt and the young lady was lying on the street;" that he did not anticipate as he entered the intersection that there was any probability of any collision or danger; that the approaching Erskine car struck his automobile immediately to the rear of the left front wheel; that he was thrown against the windshield; that he was driving on the right-hand side of Ingraham Street; that when his car was struck it took a turn to the right, to the southwest corner of the intersection; that on the curbing at the southwest corner was a lamp-post protected by a six-inch railing of railroad iron; that the right side of his car struck this railing and the car stopped against the railing and lamp-post and that the "slow" sign was broken off and was underneath his car after the collision.

There was some testimony to the effect that after the collision McEwan stated that he did not see the Erskine automobile until just before the collision. Respondent denied

that he made such statement, claiming that what he said was that when he was in the intersection he did not see the approach of the other car until just before it struck him, but that he did not say that he had not seen the other car before he entered the intersection.

A traffic officer, Mr. Pierce, testified that from the appearance of the marks on the pavement, the respondent was driving on his own right-hand side of the street; that there were certain tire marks on the street and that he was unable to determine which car made them.

Respondent testified that he saw a mark on the street where his automobile had been pushed sideways at least 18 inches at the time of the impact. He placed the point of impact as in the southwest quarter of the intersection.

Another witness gave as his opinion that the marks made by the impact of the automobiles were south of the center line of Moorland Drive, just about the center of Ingraham Street. The testimony of Officer Pierce was to the effect that what he took to be the point of impact was approximately 9 feet south of the extended north curb line of Moorland and about 15 feet west of the northerly extension of the east center line of Ingraham Street to the north curb line of Moorland Drive.

It will be seen, therefore, that the witnesses who viewed the street after the accident were not entirely in accord as to the exact point of the impact. As a result of the impact the respondent was thrown from his seat into the bottom of the car and suffered a fractured shoulder and other injuries.

Another witness testified that he was driving south on Ingraham Street at the time of the collision and had a momentary glimpse of the cars just as they collided. He testified that the respondent's car was on its own right-hand side of the street. There was no testimony from any witness disputing the testimony of respondent as to the speed of his car excepting certain claimed statements made by him shortly after the accident to the effect that he was traveling 25 to 30 miles per hour.

Pictures of the respective damaged automobiles have been brought before this court, on order, for examination and consideration. It is clearly disclosed from an observation of the photograph of the Oldsmobile that there was a com-

paratively small indentation on the left front bumper. However, the main force of the blow is evidenced by a crescent-shaped indentation on the left front fender and body extending from the middle of that fender along the running board to the left rear fender. It is respondent's contention that this evidence corroborates his statement that the Erskine car ran into the left side of his car. The picture of the Erskine car clearly shows that the main damage and force of the blow was in and about its right front fender and right front wheel. Upon this evidence the jury, by a vote of 9 to 3, returned its general verdict in favor of the respondent. It is a matter of speculation whether the jury was satisfied that the respondent was without fault or whether it was their attitude that the appellants had failed to establish negligence of respondent by a preponderance of the evidence.

█ It is now argued by appellants (1) that the physical evidence on the pavement clearly shows that the statement of respondent that he had entirely crossed the middle section of Moorland Drive when the impact occurred not only could not be true but is completely shown to have been impossible; (2) that by reason of the undisputed facts and the physical evidence, there is no substantial conflict in the evidence and that this court should not permit the verdict, under such circumstances, to stand; and (3) that from an analysis of those facts, together with the application of the law thereto, it clearly appears that the respondent was negligent, and that his negligence contributed proximately to the collision and resultant damage and that therefore the verdict of the jury is not supported by the evidence, citing *Chase* v. *Jonkey*, 12 Cal. App. (2d) 365 [55 Pac. (2d) 1229]; 10 Cal. Jur., p. 1169, sec. 381; *Austin* v. *Newton*, 46 Cal. App. 493 [189 Pac. 471]; *Meyers* v. *Bradford*, 54 Cal. App. 157 [201 Pac. 471]; *Buchignoni* v. *DeHaven*, 23 Cal. App. (2d) 76 [72 Pac. (2d) 159], and many other similar cases. We therefore deem it to be that appellants are, by their argument, advancing the theory that the evidence was such that it was established as a matter of law that the respondent was guilty of negligence proximately causing or contributing to the collision.

Approaching the questions presented purely on the basis of the question of the evidence supporting the verdict and judgment rendered, the evidence justifies the conclusion that neither respondent nor the driver of the Erskine car was

driving at an unreasonable speed. From the evidence and physical facts, it might likewise be said that the theory is supported that respondent had the right of way under section 550 of the Vehicle Code (1939). The most reasonable contention made by appellants under the evidence is that respondent having the right of way, he nevertheless failed to anticipate that the driver approaching upon the intersecting street would not obey the law and yield the right of way to him, or that he having seen the approach of the Erskine car, did not exercise reasonable care in failing to avoid the collision. Respondent frankly concedes that even though a party has a right of way, he must nevertheless use reasonable care, and if he fails to do so, he may be held to be negligent, but argues that when a party does have the right of way, and when he relies upon it, and when there is nothing in the manner in which the other vehicle is being driven to make it apparent to him that the other driver is not watching or does not propose to obey the law, then there is fairly presented for the determination of the jury the question of whether he is or is not negligent. This argument is meritorious. It has been repeatedly held in this state that a driver is not to be held negligent because he relies upon the presumption that another will use reasonable care. This applies to vehicles approaching each other on intersecting streets. (*Robinson* v. *Clemons,* 46 Cal. App. 661 [190 Pac. 203].)

In *Wynne* v. *Wright,* 105 Cal. App. 17 [286 Pac. 1057], it was held that a plaintiff having a right of way at an intersection and exercising ordinary care could assume that defendant would also use ordinary care to avoid an accident and yield the right of way. The same rule is laid down in *Briggs* v. *Koyer,* 138 Cal. App. 487 [32 Pac. (2d) 649]. In this decision the court cited with approval the following quotation:

"One who is himself not negligent is entitled to rely upon the presumption that others will exercise due care, so that it is not negligence to fail to anticipate danger which can come only from a violation of law or duty upon the part of another."

The court then stated: "That rule is peculiarly applicable to vehicles crossing each other's path in intersections." In

support of this rule the court therein cited many cases and after citing them stated:

"Each of the foregoing cases is to the effect that the question as to the negligence of the plaintiff under the facts stated by us is *one of fact* and that the determination by the trier of facts is conclusive on appeal." (Italics ours.)

The same rule has been applied in later cases. (*Lee* v. *Stephens,* 8 Cal. App. (2d) 650 [47 Pac. (2d) 1105] ; *Smith* v. *Aggola,* 27 Cal. App. (2d) 750 [81 Pac. (2d) 997].) Many cases are cited by appellants to the effect that even though a driver may have the right of way, this fact does not absolutely relieve him of the duty to use care, and despite the fact that he may have the right of way, he may nevertheless be found to be guilty of negligence. In the absence of very unusual circumstances, however, such question presents an issue of fact and not one of law. For instance, in *Almanerz* v. *San Diego Elec. Ry. Co.,* 15 Cal. App. (2d) 423 [59 Pac. (2d) 513], the court said:

"Even when a driver enters an intersection first it may be negligence, as a matter of fact, to proceed in the face of another car which is very close and coming fast. . . . It can rarely be said, as a matter of law, either that he was negligent in proceeding or that he was not. Such a question is nearly always one of fact and this case presents no exception to that general rule."

The above quotations are no doubt the true rule, and when applied to the facts in the instant case, notwithstanding the conflicting evidence, the question presented was purely one of fact for the jury which was fairly presented for its determination and is conclusive on appeal.

Appellants' argument that the physical facts often refute and dispel the evidence opposed to them receives support in the cases cited. However, in the instant case, from an examination of the photographs and the record, we are unable to say that appellants' deduction made therefrom was the only logical conclusion that could have been reached. The expression used in *Nagamatsu* v. *Roher,* 10 Cal. App. (2d) 752, 756 [53 Pac. (2d) 174], is particularly applicable:

" 'Perhaps there is nothing more certain about an automobile accident than the fact that the visible results afterwards are not an infallible guide in determining what occurred' . . . It is impossible to tell from the condition of the cars,

the main physical evidence relied upon, what part thereof resulted from the collision and what part from the fall.''

Whether or not the negligence of either driver was a proximate cause of the collision and resultant injuries and whether or not the negligence of each concurred with that of the other was a question of fact to be decided by the jury, and where there was evidence to support the determination so made it will not be disturbed on appeal, even though the facts would warrant a different conclusion. (*Dougherty* v. *Ellingson,* 97 Cal. App. 87, 93 [275 Pac. 456]; *Fishman* v. *Silva,* 116 Cal. App. 1, 7 [2 Pac. (2d) 473].)

Appellants next present the point that the evidence disclosed that respondent observed the approach of the Erskine automobile and by the exercise of the slightest care could have avoided the collision, and therefore offered evidence by way of questions propounded to respondent to show that the intersection was a dangerous one and that respondent had knowledge of that fact, in an endeavor to develop the last clear chance rule. Appellants' instructions bearing on that rule were thereafter offered and refused. The questions to which objections were sustained were directed to respondent and were as follows: ''Q. You knew, did you not, that this intersection of Ingraham Street and Moorland was a dangerous intersection? MR. MONROE: . . . We object to that as calling for a conclusion. THE COURT: Sustained. Q. You knew other accidents had happened at that intersection, did you not? MR. MONROE: Objected to as immaterial. THE COURT: Sustained.'' Appellants claim error in the ruling, citing *McGraw* v. *Friend & Terry Lumber Co.,* 133 Cal. 589, 592 [65 Pac. 1051], and *Riley* v. *Berkeley Motors Co.,* 1 Cal. App. (2d) 217, 220 [36 Pac. (2d) 398]; and in the refusal to give the instructions mentioned, citing *Gutter* v. *Niesley,* 1 Cal. App. (2d) 69, 71 [36 Pac. (2d) 155], *Welch* v. *Sink,* 24 Cal. App. (2d) 231, 236 [74 Pac. (2d) 832], *Godfrey* v. *Brown,* 220 Cal. 57, 62 [29 Pac. (2d) 165, 93 A. L. R. 1092], *Rush* v. *Lagomarsino,* 196 Cal. 308, 317 [237 Pac. 1066], *Donat* v. *Dillon,* 192 Cal. 426, 429 [221 Pac. 193], *Boynton* v. *Richfield Oil Co.,* 117 Cal. App. 699, 700 [4 Pac. (2d) 614], *Girdner* v. *Union Oil Co.,* 216 Cal. 197, at 202 [13 Pac. (2d) 915], and *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, 522 [74 Pac. 15, 98 Am. St. Rep. 85, 63 L. R. A. 238]. The ruling of the court on the

propounded questions appears to have been properly sustained on the grounds mentioned. Whether respondent had knowledge of other and different accidents arising under different sets of circumstances at this intersection was immaterial. The characteristics of the intersection were matters concerning which the jury was fully advised, and of which respondent was fully aware. The question of whether the corner was "a dangerous corner" would call for a conclusion. (*Duncan* v. *Atchison, T. & S. F. Ry. Co.*, 86 Kan. 112 [119 Pac. 356, 51 L. R. A. (N. S.) 565].) ▇ Knowledge of defects or conditions which are dangerous in reference to streets or intersections are admissible for the purpose of establishing the reasonable amount of care required under the circumstances. (*Buckingham* v. *Commary-Peterson Co.*, 39 Cal. App. 154, 160 [178 Pac. 318].) The record shows that the respondent was familiar with this particular intersection, the character of the streets and the traffic thereon, and demonstrated his familiarity. What additional facts appellants wished to show by the questions propounded is not established by an offer of proof or otherwise. We see no prejudicial error in the rulings on the question of evidence.

▇ As to the refusal to give certain proffered instructions, it is ordinarily the duty of the court to give such appropriate instructions as are offered which will adequately and fairly guide the jury in its deliberations on the evidence legally produced. The court is not required to give every instruction requested by a litigant and is not required to instruct the jury upon any particular phase of the law more than once, nor to say the same thing in as many different ways as the ingenuity of counsel may suggest. In addition to other instructions, the court instructed the jury: "I neglected to state, in explaining the right of way rule, that regardless of whether a person has or has not the right of way, he must still drive with ordinary care and caution." Some of appellants' proposed instructions on that subject might well have been read in place of the ones given. Although the language used by the court in its several instructions differed considerably from that used by counsel in the proposed instructions and was not as clear and informative an exposition of the law as that suggested, the substance of the proposed instructions was amply covered.

Respondent contends that the court was justified in refusing to give appellants' proffered instruction on the "last clear chance" rule, and quotes from 2 California Jurisprudence Ten-year Supplement, page 176, section 120: "The necessary elements of the Doctrine of Last Clear Chance are said by current authorities to be the following: (1) The plaintiff has been negligent and, as a result thereof, is in a position of danger from which he cannot escape by the exercise of ordinary care," and states that this doctrine is applicable only in those cases where the plaintiff by *his* negligence has placed *himself* in a position of imminent danger, citing *Hamblin* v. *Schultis,* 64 Cal. App. 104, 105 [220 Pac. 320]. It is respondent's contention that the doctrine of last clear chance is an exception to the rule of contributory negligence, and that by its operation, under proper circumstances, the plaintiff who has himself been negligent, is permitted to recover, and that in the instant action it was conceded that the deceased, a guest in the car, was not negligent; that no effort was made to establish any negligence on her part; that it was conceded that the negligence of the driver of the car in which she was riding was not attributable to her and that the jury was instructed that the negligence of that driver was not an issue in the case and that therefore the doctrine of last clear chance had no applicability to the issues here involved. The question as to whether or not the doctrine of last clear chance is applicable in a given case depends entirely on the existence or non-existence of the elements necessary to bring it into operation. (*Girdner* v. *Union Oil Co., supra.*) The essential elements of the doctrine of last clear chance are clearly set forth in *Girdner* v. *Union Oil Co., supra.* (See, also, Last Clear Chance, by Mark A. Hall, sec. 5, p. 2.)

If all of the elements of the last clear chance rule be present the doctrine applies and enables the plaintiff to recover, notwithstanding his own negligence, but if any of them be absent, the doctrine does not apply and the case is governed by the ordinary rules of negligence and contributory negligence. (*Palmer* v. *Tschudy,* 191 Cal. 696 [218 Pac. 36].)

The part of the court's instructions which counsel claims particularly bears on the doctrine of the last clear chance reads: "You are instructed that a person is not privileged to injure another simply because such other person is negli-

gently or otherwise in a position of danger. If a defendant has the opportunity of avoiding the injury, he must at his peril, exercise it.'' █ Even if appellants' contention could be upheld, which we do not do, that the guest in the instant case was entitled to invoke the last clear chance rule even though her contributory negligence was not pleaded or established by the evidence, it becomes apparent that the trial court was justified in refusing to give the proffered instruction, not only on the ground that the instruction itself did not contain a statement of all of the essential elements of the rule, but also on the ground that there was no substantial evidence of each and all of the elements essential under the established rule. (*Bailey* v. *Wilson*, 16 Cal. App. (2d) 645 [61 Pac. (2d) 68].)

█ Appellants next complain that because at certain places in the court's instructions it used the expression ''the proximate cause'' rather than the expression ''a proximate cause'', the instructions were thereby erroneous, inconsistent and conflicting, citing *Morris* v. *Purity Sausage Co.*, 2 Cal. App. (2d) 536, 542 [38 Pac. (2d) 193], and *Straten* v. *Spencer*, 52 Cal. App. 98, 106 [197 Pac. 540]. Appellants contend that by the use of the term ''the proximate cause'' is meant the *sole* cause, citing *Flood* v. *Miura*, 120 Cal. App. 467 [8 Pac. (2d) 552], and that where one is injured by the concurring negligence of two persons, the injured party may recover from either or both, regardless of whose negligence may have been greater (*Fishman* v. *Silva*, 116 Cal. App. 1, 7 [2 Pac. (2d) 473]), and that the term ''a proximate cause'' was the one and only proper term to be used and that where these terms were intermittently used that the jury was told that respondent's negligence must have been *the sole cause* of the accident and the giving of the instructions complained of constituted reversible error when considered in connection with the facts in the case, citing *Akers* v. *Cowan*, 26 Cal. App. (2d) 694 [80 Pac. (2d) 143].

Appellants offered instructions on the question of ''a proximate cause'' and they were refused. The court, however, did give specific instructions on the subject, one of which reads in part as follows: ''Now the plaintiff has the burden of establishing by a preponderance of the evidence that the defendant was negligent and that his negligence was a proxi-

mate cause of the accident and injuries. It does not have to be the sole cause. It must be a proximate cause . . . ''
From the instructions considered as a whole, we are convinced that the jury was not misled, but was told that the negligence of the defendant, if any, need not be the sole cause, but that it was sufficient if it was a proximate cause or one of the proximate causes. An inadvertence of this character is not necessarily prejudicially erroneous. (*Briggs* v. *Jess Mead, Inc.,* 93 Cal. App. 666 [270 Pac. 263]; *Squier* v. *Davis Standard Bread Co.,* 181 Cal. 533 [185 Pac. 391]; *Flood* v. *Miura, supra.*)

■ The next assignment of error involves an instruction given in the language of section 550 of the Vehicle Code (1939), respecting the right of way rule at intersections. Appellants contend that due to the jog in the street that section 550 of the Vehicle Code was not applicable; that due to this particular jog, respondent was compelled to veer to the left to some extent while passing through the intersection and therefore that section 544 of the Vehicle Code governed and required respondent to give an appropriate signal of his intention to so turn if any other vehicle might be affected by such movement. From the nature of the intersection described, the instruction given under section 550 of the Vehicle Code was appropriate and proper. (Sec. 86, Vehicle Code (1939).)

■ Our attention has not been directed to any refused instruction offered by appellants bearing on the provisions of section 544 of the Vehicle Code. Appellants therefore cannot complain of the failure to give such instruction even though it may be assumed it was applicable. (*Scandalis* v. *Jenny,* 132 Cal. App. 307, 313 [22 Pac. (2d) 545].)

[11] It is next contended that it was prejudicial error for the court to instruct the jury as follows: ''The fact that a collision occurred is, in itself, no evidence of negligence on the part of a defendant. Standing alone, it does not justify a finding of negligence, for the burden of proving negligence remains to be proved, as I have heretofore indicated, in addition to the admitted fact that a collision occurred.'' Appellants argue that when the court said that the occurrence of the collision was *no* evidence of negligence on the part of the *defendant* it left an inference that there was evidence of

negligence on the part of the driver of the car in which the deceased was riding, because it was not within the realm of reason to believe that a collision could occur in an open intersection in broad daylight without somebody being negligent, citing *DeLannoy* v. *Grammatikos,* 126 Cal. App. 79, 87 [14 Pac. (2d) 542]. We see little, if any, merit to this contention under the facts and issues presented. (*Depons* v. *Ariss,* 182 Cal. 485 [188 Pac. 797].)

■ The last question presented is to the effect that a new trial should have been granted because it is claimed that Mr. McEwan, outside of the courtroom, made certain derogatory remarks to the mother and sister of one of the jurors concerning the deceased girl. It is claimed that he made the claimed remarks for the purpose of influencing the jury. It is admitted that there was no evidence produced on the motion for new trial to show that anything alleged to have been said by McEwan was communicated to the juror or jury. After judgment was entered counsel for appellants filed a motion for new trial, setting forth in general terms all statutory grounds. Appellants' counsel filed his *ex parte* affidavit. Upon this affidavit the court issued an *ex parte* order to require the taking of depositions of two witnesses (the mother and sister of the juror). The testimony of the witnesses was taken over objections. It was claimed by the witnesses that during a conversation with them out of the presence of any juror, that McEwan stated in effect that the deceased girl looked as though she were pregnant and that he made some statement to the effect that the deceased ran around with service men and that the funeral bill of $435.83 was excessive for people on the WPA. These witnesses testified that they had not informed the juror of this conversation until after the verdict. McEwan in his affidavit admitted a conversation with the two witnesses but denied that he had made the derogatory statements. When the motion for new trial was argued and on January 27, 1940, the trial judge stated that he was inclined to believe McEwan did make the derogatory statements concerning the dead girl in this conversation but that there being an entire absence of any proof at all that this conversation ever came to the ears of the jury or any of them, he failed to see that it furnished any grounds for granting a new trial. The trial judge fur-

ther stated that he was not satisfied that the verdict was contrary to the weight of the evidence.

Appellants' counsel then stated that he believed that the juror was informed of this conversation before the verdict was returned and asked leave to have that juror, a Mrs. Warren, brought into court and examined. The court then asked: "How about the time? When is the time up on the motion for new trial?" Counsel for appellants replied: "The sixty days will be up on February 3rd." The court then set February 1st for further hearing. On that day when the matter was called, counsel for respondent called attention to the fact that the statutory time within which the court had power to pass upon the motion for new trial under the provisions of section 660 of the Code of Civil Procedure had expired. The court believed that the time limitation therein set forth was jurisdictional but suggested that appellants' counsel investigate the matter and ascertain whether he might seek relief under the provisions of section 473 of the Code of Civil Procedure. Nothing further was done and this appeal followed. ▆▆▆ An order denying a motion for new trial may be reviewed on an appeal from the judgment even though denied by operation of law. (*Lewith* v. *Rehmke,* 215 Cal. 241, 243 [9 Pac. (2d) 297]; sec. 956, Code Civ. Proc.; *Casner* v. *Daily News Co., Ltd.,* 12 Cal. (2d) 402 [84 Pac. (2d) 1032].) Many authorities are cited in reference to the exception to the general rule that a juror may not impeach his verdict. (*People* v. *De Voe,* 123 Cal. App. 233 [11 Pac. (2d) 26]; *Williams* v. *Bridges,* 140 Cal. App. 537 [35 Pac. (2d) 407].) It is unnecessary to determine that question, for it is quite apparent that the juror did not testify or sign any affidavit in connection with the subject-matter. It is not shown anywhere what the witness would have said in this connection had she been allowed to testify. We cannot assume that she was apprised of the claimed conversation prior to the verdict or if she was so apprised of it she was influenced in favor of respondent by virtue of it. In fact, it appears that she was one of the three who voted for a verdict for appellants. Appellants have shown no prejudice in the record. We perceive no prejudicial error in the denial of the motion for new trial or in the giving or refusing to give the instructions heretofore mentioned. The question

of the negligence of the respondent was a question of fact and was properly presented to the jury.

For the reasons expressed the judgment is affirmed.

Barnard, P. J., concurred.